UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DMB FINANCIAL, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: 1:21-cv-12065-FDS |
| v. | ) |
| | ) |
| SYMPLE LENDING, LLC, and | ) |
| BEYOND FINANCE, LLC, | ) |
| | ) |
| Defendants. | ) |

**AFFIDAVIT OF HOUSTON FRALEY IN SUPPORT OF
SYMPLE LENDING, LLC'S MOTION TO DISMISS AND OPPOSITION TO
DMB FINANCIAL, LLC'S MOTION FOR PRELIMINARY INJUNCTION**

I, Houston Fraley, on my oath, do hereby state and declare as follows:

1. I am over the age of eighteen (18).

2. I am a resident of the State of California, and I am the President and Chief Executive Officer of Symple Lending, LLC ("Symple") which is named as a defendant in this action.

3. I submit this affidavit in support of Symple's Opposition to DMB Financial, LLC's ("DMB") Motion for Preliminary Injunction and Symple's Motion to Dismiss the Complaint in this action.

4. The statements set forth in this affidavit are based on personal knowledge.

5. Symple is incorporated under the laws of the State of Wyoming.

6. Symple has a principal place of business at 30 N. Gould Street, Suite N, Sheridan, Wyoming 82801. Symple also has an office in the State of California.

1

7. Symple's principal business is marketing, including online marketing.

8. Symple does not own or rent any property, including commercial premises or office space, in the Commonwealth of Massachusetts.

9. Symple does not have any employees in the Commonwealth of Massachusetts.

10. Symple does not market its business products or services in the Commonwealth of Massachusetts.

11. Symple does not have any ownership interest in any affiliate, subsidiary or other entity that is either located in, or registered under laws of, the Commonwealth of Massachusetts.

12. Symple does not specifically target its marketing efforts or business operations at commercial entities or private citizens located in the Commonwealth of Massachusetts.

13. Symple does not regularly transact business in the Commonwealth of Massachusetts and does not derive any significant income in Massachusetts.

14. Symple has no regular ties to, or contacts with, the Commonwealth of Massachusetts.

15. According to its Complaint, DMB is in the debt settlement business, and purports to help consumers with credit card debt reduce their credit balances by negotiating on their behalf directly with credit card companies.

16. Additionally, according to its Complaint, DMB will enter into agreements with other persons and/or entities who market to, and enroll, potential customers into one of DMB's debt settlement programs.

17. In or about January 2021, DMB approached Symple in January 2021 in an attempt to lure Symple to become a non-exclusive affiliate. Symple declined and instead created a business relationship with ClearOne Advantage, LLC.

18. DMB returned in May 2021 with an offer to purchase equity in Symple to persuade Symple would agree to become DMB's affiliate.

19. On or about May 13, 2021, John Caron, DMB's Chief Revenue Officer, flew to California to meet with Houston Fraley, Symple's CEO, and other Symple business executives, to discuss possible terms of an agreement.

20. Mr. Caron signed a May 13, 2021 Letter of Intent in person in California, that controlling members of Symple countersigned in California. *See* May 13, 2021 Letter of Intent between DMB and Blackstone Holdings Group, LLC (hereinafter "LOI") (ECF No. 6-3)

21. On the same day and as part of the same proposed transaction, in California, Symple signed a May 13, 2021 DMB Financial Affiliate Sales Agreement (hereinafter "Affiliate Agreement"). *See* Affiliate Agreement (ECF No. 6-1). Symple executed the Affiliate Agreement solely as a result of and in reliance on the LOI with the understanding that the two agreements were intertwined. The understanding was that if the deal contemplated by the LOI did not close, Symple would not be an exclusive affiliate of DMB.

22. The Affiliate Agreement did not contain an Exhibit A at the time of execution. A true and accurate copy of an email from me evidencing this is attached hereto as **Exhibit 1**. Instead, DMB paid referral fees to Symple based on the 6.75% referenced in the LOI.

23. Symple would never have agreed to the Affiliate Agreement absent the LOI and the terms provided in it.

24. The negotiations that led to the LOI and Affiliate Agreement did not take place in the Commonwealth of Massachusetts. The negotiations took place in California. Symple's officers never came to Massachusetts and never would have communicated with DMB in

Massachusetts but for the relationship DMB created with Symple as a result of the California visit.

25.     Aside from a choice of law provision that requires the Affiliate Agreement to be interpreted under Massachusetts law, the Affiliate Agreement neither references Massachusetts residents nor obligates the parties thereto to perform any marketing services in the Commonwealth of Massachusetts to enroll them in DMB's debt settlement programs.

26.     Symple began using DMB's CRM platform, which is hosted and managed by a California company, shortly after the LOI and Affiliate Agreement were executed.

27.     Symple also enrolled customers into DMB's programs for approximately four months while it conducted further due diligence.

28.     Over that period, DMB never engaged in any meaningful negotiations to close a definitive equity purchase as contemplated under the LOI.

29.     Symple never considered itself an "exclusive" affiliate and would not have considered itself as such until the definitive transactions contemplated by the LOI were consummated. In evidence of this, there is correspondence between Symple and John Caron, DMB's Chief Revenue Officer, in which Mr. Caron acknowledges that Symple is doing business with other debt settlement companies, namely ClearOne Advantage, LLC. A true and accurate copy is attached as **Exhibit 2**.

30.     Mr. Caron reiterated his understanding that the parties were not exclusive in September 2021, when he corresponded with a Symple and offered Symple a line of credit that would have required "exclusivity" during the credit term, an agreement that Symple rejected. A true and accurate copy is attached as **Exhibit 3**.

31. In the late summer and early fall of 2021, Symple learned the full scope of the accusations made by the Consumer Protection Financial Bureau and Massachusetts Attorney General regarding DMB's deceptive business practices and legal and regulatory violations. I had expressed concern in May 2021 that the Consumer Protection Financial Bureau was investigating DMB, but Mr. Caron said DMB was going to countersue and make the investigation go away. Mr. Caron never told me or anyone at Symple about the lawsuit by the Massachusetts Attorney General.

32. Due to DMB's misrepresentations, how DMB conducted its business, and the legal and regulatory allegations made by the Commonwealth and CPFB, Symple could no longer do business with DMB.

33. Symple was losing upfront sales from customers once they learned DMB was behind the debt relief program and some customers who enrolled disenrolled after investigating DMB's reputation.

34. Symple even lost its own employees to competitors once they learned that DMB's products might be marketed by Symple.

35. One of these employees was the employee referenced by Mr. Caron as allegedly marketing Beyond's programs. His last day of work was October 12, 2021. A true and accurate copy of this employee's resignation is attached as **Exhibit 4**.

36. Symple notified DMB on November 1, 2021 that that it would no longer enroll customers in DMB's programs. DMB then immediately cut off Symple's access to DMB's CRM.

I declare under penalty of perjury that the foregoing is true and correct. Executed on

January 3 2021                    .

_____
Houston Fraley