### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

_____
)
**DMB FINANCIAL LLC,**                                )
)
         **Plaintiff,**                                       )
)
         **v.**                                                    )          **Civil Action No.**
)          **21-12065-FDS**
**SYMPLE LENDING LLC and**                       )
**BEYOND FINANCE LLC,**                             )
)
         **Defendants.**                                   )
_____)


### MEMORANDUM AND ORDER ON
### DEFENDANT'S MOTION TO DISMISS

**SAYLOR, C.J.**

This is a contract dispute between debt-settlement companies. Plaintiff DMB Financial
LLC has sued Symple Lending LLC for breach of contract, violations of Mass. Gen. Laws ch.
93A, and related claims. It also has sued one of its competitors, Beyond Finance LLC, as a
nominal defendant. Jurisdiction is based on diversity of citizenship.

Symple has moved to dismiss the complaint on different grounds, including lack of
personal jurisdiction under Fed. R. Civ. P. 12(b)(2), improper venue under Fed. R. Civ. P.
12(b)(3), and failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the following reasons,
that motion will be granted in part and denied in part.

**I.      Background**

      **A.      Factual Background**

The following facts are set forth as alleged in the complaint.

DMB Financial LLC is a Massachusetts-based limited liability company in the business

of assisting consumers negotiate and settle their debts with credit-card companies.  (Compl. ¶¶ 1, 4).

Symple Lending LLC is a Wyoming-based limited liability company that marketed DMB's services to consumers.  (*Id.* ¶¶ 2, 6).  Beyond Finance LLC is a Texas-based limited liability company that competes with DMB in the debt-settlement industry.  (*Id.* ¶¶ 3, 14).

As part of its business, DMB enters into affiliate sales agreements with other companies to market and enroll consumers in its debt-settlement programs.  (*Id.* ¶ 5).  DMB and Symple signed such an agreement on May 13, 2021.  (*Id.* ¶ 6; Ex. 1).  That agreement stated in relevant part:

> [Symple] acknowledges that the compensation provided in "Schedule A-Compensation" represents true and valuable consideration between the Parties and exceeds prevailing market rates.  In exchange for such consideration, [Symple] agrees that it will not market or promote any other debt settlement program during the term of this Agreement without DMB's express written consent and all Consumers that [Symple] contacts regarding the Program will only be attempted to be enrolled in the Program.

(Compl. ¶ 6; Ex. 1 § 7.1).[1]  According to the complaint, DMB paid Symple rates in excess of its standard commission schedule because, in part, it asked Symple for exclusivity.  (Compl. ¶ 8).  It further contends that it only gave consent for Symple to promote one other debt-settlement program, ClearOne Advantage LLC in Illinois.  (*Id.* ¶ 7).

Also on May 13, 2021, DMB and Symple agreed to terms expressed in a letter of intent, which contemplated that DMB would purchase 30% of Symple's equity.  (*Id.* ¶ 9; Ex. 2).  DMB then advanced $110,000 toward that purchase.  (Compl. ¶ 9).  According to the complaint,

---

[1] On a motion to dismiss, in addition to documents attached to the complaint or expressly incorporated therein, the Court may properly take into account four types of documents outside the complaint without converting the motion into one for summary judgment:  (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint.  *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

Symple later backed out of that deal, but DMB informed Symple that it would not immediately demand reimbursement of the $110,000 because their affiliate relationship was going well.  (*Id.* ¶ 10).

To further that relationship, DMB contends that it took certain steps.  It advanced Symple monthly commission payments on multiple occasions to assist Symple with cash flow, changed how it calculated commissions to ensure that Symple was paid faster, and agreed to reduce by 50% the cost of credit reports pulled by Symple.  (*Id.* ¶ 11).  It provided confidential information that helped Symple obtain a lending license in Utah, introduced Symple to digital media companies, and provided discounted access to its data scientist to improve Symple's direct-mail marketing.  (*Id.*).  It also provided access to its direct-mail design team, which offered input on Symple's direct mailers.  (*Id.*).  It customized, at its own cost, a customer relations management ("CRM") system based on Symple's sales process, built custom reports and performance dashboards for Symple, and created custom email and SMS "drip campaigns" and templates for Symple.  (*Id.*).  Finally, it handled complaints made to the Better Business Bureau and American Fair Credit Council on Symple's behalf.  (*Id.*).  DMB contends that it would not have undertaken those actions if Symple had not agreed to the exclusivity provision.  (*Id.* ¶ 12).

From June through October 2021, Symple enrolled the following debt in DMB programs:

June:  $1,698,529.98
July:  $1,913,348.88
August:  $1,988,038.81
September:  $2,081,531.40
October:  $687,842.00

(*Id.* ¶ 13).  The last enrollment took place on October 8, 2021; no amounts were reported for November 2021.  (*Id.*).

Between late October and early November, DMB learned that Symple's new client

enrollment had fallen because Symple was marketing for Beyond, a direct competitor of DMB. (*Id.* ¶ 14).  It also learned that Symple had been soliciting consumers who signed up with DMB in an effort to get them to move to Beyond's program.  (*Id.*).

Since then, DMB has paid Symple all of its owed commission, except for approximately $6,000.  (*Id.* ¶ 15).  It has withheld that amount in light of Symple's alleged failure to abide by the affiliate sales agreement and because Symple has not reimbursed it for the $110,000 advance. (*Id.*).

## B.   Procedural Background

This case was originally filed in Massachusetts state court.  On December 17, 2021, Symple removed the matter to this Court.

The complaint asserts seven claims.  Counts 1 and 2 assert claims for breach of contract and breach of the implied covenant of good faith and fair dealing, respectively.  (Compl. ¶¶ 16-24).  Counts 3 and 4 assert claims for unjust enrichment and promissory estoppel.  (*Id.* ¶¶ 25-33). Counts 5 and 6 seek remedies of declaratory judgment and specific performance.  (*Id.* ¶¶ 34-39). And Count 7 asserts a claim for violations of Mass. Gen. Laws ch. 93A.  (*Id.* ¶¶ 40-44).

Symple has moved to dismiss the complaint on different grounds, including lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), improper venue under Fed. R. Civ. P. 12(b)(3), and failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## II.   Analysis

### A.   Personal Jurisdiction

Defendant first contends that the complaint must be dismissed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

A plaintiff bears the burden of establishing that the court has personal jurisdiction over a defendant.  *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50

(1st Cir. 2002).  When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(2), the court

may use several standards to assess whether a plaintiff has carried that burden:  the "*prima facie*"

standard, the "preponderance of the evidence" standard, or the "likelihood" standard.  *See id.* at

50-51, 51 n.5; *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145-46 (1st Cir.

1995).  Where, as here, the court is called to make that assessment without first holding an

evidentiary hearing, the *prima facie* standard is applied.  *See United States v. Swiss Am. Bank,

Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001).

   Under that standard, the court takes the plaintiff's "properly documented evidentiary

proffers as true and construe[s] them in the light most favorable to [the plaintiff's] jurisdictional

claim." *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016) (citing *Phillips v.

Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008)).  The plaintiff may not "rely on unsupported

allegations in its pleadings."  *Id.* (quoting *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118,

134 (1st Cir. 2006)) (internal alteration omitted).  Instead, the plaintiff "must put forward

'evidence of specific facts' to demonstrate that jurisdiction exists."  *Id.* (quoting *Platten*, 437

F.3d at 134).  "[T]he plaintiff . . . may rely on jurisdictional facts documented in 'supplemental

filings (such as affidavits) [ ] contained in the record' . . . ."  *Motus, LLC v. CarData

Consultants, Inc.*, 23 F.4th 115, 123 (1st Cir. 2022) (quoting *Baskin-Robbins Franchising LLC v.

Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016)).  Facts offered by the defendant "become

part of the mix only to the extent that they are uncontradicted."  *Astro-Med, Inc. v. Nihon

Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir. 2009) (quoting *Adelson v. Hananel*, 510 F.3d 43, 48

(1st Cir. 2007)).

   The exercise of personal jurisdiction over a defendant must be authorized by statute and

consistent with the due-process requirements of the United States Constitution.  *See A Corp.*, 812

F.3d at 58 (citing *Daynard*, 290 F.3d at 52).[2]  Consistent with those requirements, a court may exercise either general or specific jurisdiction.  *See Baskin-Robbins*, 825 F.3d at 35.

> Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities.  General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.

*Swiss Am. Bank*, 274 F.3d at 618 (internal citations and quotation marks omitted).

### 1.  General Jurisdiction

As to general jurisdiction, the complaint alleges that defendant is a Wyoming limited liability company with a principal place of business in Wyoming.  (Compl. ¶ 2).  Plaintiff does not contend that defendant has "affiliations with [Massachusetts] . . . so 'continuous and systematic' as to render [it] essentially at home . . . ."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).  Nor does plaintiff allege that defendant's affiliations with Massachusetts are so substantial that it is "comparable to a domestic enterprise in that State."  *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014).  Accordingly, the Court may not exercise general jurisdiction over defendant.

### 2.  Specific Jurisdiction

As to specific jurisdiction, due process requires that a plaintiff establish three conditions:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.  Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.  Third, the exercise of jurisdiction must be reasonable.

---

[2] Defendant has not disputed personal jurisdiction under the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3.

*Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016) (quoting *Phillips*, 530
F.3d at 27) (internal alteration omitted); *see also Motus*, 23 F.4th at 122.

### a.    Relatedness

First, plaintiff's claims must arise out of, or relate to, defendant's forum-state activities.
*See Copia Commc'ns*, 812 F.3d at 4.  Plaintiff's principal claim is that defendant breached the
affiliate sales agreement by marketing a competitor's debt-settlement program.  In addition to
breach of contract, the complaint asserts claims for breach of the implied covenant of good faith
and fair dealing, unjust enrichment, promissory estoppel, declaratory judgment, specific
performance, and violations of Mass. Gen. Laws ch. 93A.

"A consideration in a contract action such as this is whether the defendant's forum-based
activity was instrumental in the contract's formation or breach."  *Bluetarp Fin., Inc. v. Matrix
Const. Co., Inc.*, 709 F.3d 72, 80 (1st Cir. 2013).  "Inferences can be drawn from the parties'
prior negotiations and contemplated future consequences, along with the terms of the contract
and the parties' actual course of dealing."  *Id.* (internal quotation marks and citation omitted).

Here, the complaint and supplemental filings identify several relevant facts.  Defendant
contracted to provide services to plaintiff, a Massachusetts limited liability company, and was
paid for its services from Massachusetts.  (Ex. 1).  It undertook marketing efforts on plaintiff's
behalf, thereby marketing to hundreds of Massachusetts residents.  (Suppl. Aff. of Caron ¶ 8).[3]  It
helped consumers sign up for plaintiff's debt-settlement programs, which are based in
Massachusetts.  (*Id.*).  And it allegedly breached the contract by soliciting consumers who signed

---

[3] Defendant has filed an affidavit that appears to conflict with that contention, at least in part.  (Aff. of
Fraley ¶ 12) ("Symple does not specifically target its marketing efforts or business operations at commercial entities
or private citizens located in the Commonwealth of Massachusetts.").  However, under the *prima facie* standard,
facts offered by the defendant "become part of the mix only to the extent that they are uncontradicted."  *Astro-Med,
Inc.*, 591 F.3d at 8.

up for plaintiff's Massachusetts-based programs in an effort to get those consumers to move to

Beyond's program.  (Compl. ¶ 14).

      As defendant asserts, it does not appear that the contract was actually executed or

negotiated in Massachusetts.  (Aff. of Fraley ¶¶ 19, 21, 24).  However, the contract also

contemplated a long-term relationship that would result in defendant continuing to interact with

plaintiff in Massachusetts.  *See Bluetarp Fin.*, 709 F.3d at 80; *see also Daynard*, 290 F.3d at 61

(finding relatedness for breach-of-contract claim where contractual "relationship contemplated

ongoing interaction between [plaintiff], in Massachusetts" and defendants out of state).  That

relationship reasonably included payments issuing from Massachusetts, employees in

Massachusetts keeping track of defendant's new client enrollment, and defendant

"communicating with those employees to address any issues that arose."  *See Bluetarp Fin.*, 709

F.3d at 80.  And the alleged breach occurred when defendant marketed consumers away from

plaintiff's Massachusetts-based programs to another competitor.  It is those forum-based

activities that establish relatedness.  Contrary to defendant's assertion, this is not a case like

*Brabner v. Chow*, where "defendant did not visit or send communications into Massachusetts for

any reason other than because plaintiff[ ] happened to be there."  2014 WL 1404702, at *9 (D.

Mass. Apr. 9, 2014).[4]  Nor is it like *Zuraitis v. Kimberden, Inc.*, where the Massachusetts

Superior Court concluded that exchanging phone calls and faxes with a Massachusetts resident

interested in buying a horse was not enough.  2008 WL 142773, at *3 (Mass. Super. Jan. 2,

2008).

      In light of the foregoing, plaintiff's claims arise out of or relate to defendant's activities

---

[4] It is also significant that this Court concluded in *Brabner* that defendant's forum-state activities were "sufficiently related to plaintiffs' claims to satisfy the relatedness inquiry for specific personal jurisdiction."  2014 WL 1404702, at *7.  The dispositive issue there was failure to establish purposeful availment.  *Id.* at *7-9.

in Massachusetts.

### b.    Purposeful Availment

Second, defendant's in-state contacts must constitute a purposeful availment of the privilege of conducting activities in Massachusetts, thereby invoking the benefits and protections of Massachusetts law and making defendant's involuntary presence foreseeable. *See Copia Commc'ns*, 812 F.3d at 4. "The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." *Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir. 1995). The purposeful availment inquiry considers "the voluntariness of the contacts and the foreseeability of being haled into court based on those contacts." *Motus*, 23 F.4th at 124. "[V]oluntariness demands that the defendant's contacts with the forum result proximately from its own actions. Foreseeability demands that the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Id.* (internal citations and quotation marks omitted).

"[S]imply entering into a contract with a company in the forum state does not automatically establish the requisite contacts." *Bluetarp Fin.*, 709 F.3d at 82. But here there is substantially more. For example, defendant not only contracted with plaintiff, but it "followed through with the contract's expectations" and provided marketing services to a Massachusetts-based company. *Id.* Defendant's contacts were deliberate, prolonged, and ongoing; the complaint alleges that defendant enrolled new clients in plaintiff's Massachusetts-based programs between June and October 2021, representing more than $8,000,000 in consumer debt. (Compl. ¶ 13). It received payment from plaintiff, in Massachusetts, and marketed plaintiff's programs to hundreds of Massachusetts residents. (Suppl. Aff. of Caron ¶ 8). That conduct was not "founded on the one-sided actions" of plaintiff. *Bluetarp Fin.*, 709 F.3d at 82.

Defendant contends that its contacts with Massachusetts were made in response to communications from plaintiff, which does not support a finding of personal jurisdiction.  *See Brabner*, 2014 WL 1404702, at *9.  It also claims that an executed contract and a few remote contacts are insufficient.  *See Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 292 (1st Cir. 1999) ("Without evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship—say, by solicitation—the mere fact that the defendant willingly entered into a tendered relationship does not carry the day.") (internal citations omitted).  However, its contacts with Massachusetts were affirmative and voluntary, not merely made in response to plaintiff's requests.  It knowingly entered into a contractual relationship "with a company that it knew (it was clear on the account agreement's face) was located in [Massachusetts]" and provided services in contemplation of a prolonged business relationship.  *See Bluetarp Fin.*, 709 F.3d at 82.  It also marketed to Massachusetts residents and enrolled consumers in Massachusetts-based debt-settlement programs.

There remains one other consideration.  The affiliate sales agreement contains a forum-selection clause:

> **11.4  Injunctive Relief.**  It is agreed that the unauthorized disclosure or use of any Confidential Information may cause immediate or irreparable injury to the Party providing the Confidential Information, and that such Party may not be adequately compensated for such injury in monetary damages.  Each Party therefore acknowledges and agrees that, in such event, the other Party shall be entitled to seek any temporary or permanent injunctive relief necessary to prevent such unauthorized disclosure or use, or threat of disclosure or use, and consents to the jurisdiction of any federal or state court of competent jurisdiction sitting in Essex County, Massachusetts for purposes of any suit hereunder and to service of process therein by certified or registered mail, return receipt requested.

(Ex. 1 § 11.4).[5]  Plaintiff contends that the forum-selection clause is generally applicable,

---

[5] There is also a forum-selection clause in the letter of intent ("LOI"), which contemplated plaintiff purchasing 30% of defendant's equity.  Under Massachusetts law, a "letter of intent will bind the signatories to perform the recited obligations if it was the intent of the parties to be bound."  *Falvey Cargo Underwriting, Ltd. v.*

providing an excerpt of the latter half of Section 11.4 without the immediately preceding context. It asserts that defendant cannot object to personal jurisdiction because it filed this lawsuit in Essex Superior Court pursuant to that clause. *See Provanzano v. Parker View Farm, Inc.*, 827 F. Supp. 2d 53, 58 (D. Mass. 2011) (stating that "a party to a contract waives its right to challenge personal jurisdiction" when it signs a forum-selection clause that governs the dispute).

This lawsuit does not seek injunctive relief relating to the unauthorized disclosure of confidential information. And there is no broader forum-selection clause in the agreement. Nonetheless, a forum-selection clause can bear on personal jurisdiction issues even if it is not, by itself, dispositive. *See Bluetarp Fin.*, 709 F.3d at 81-82 & n.9 (noting that forum-selection clause made it "eminently foreseeable that [defendant] would be held accountable for any breach in Maine's courts"). So too with the affiliate sales agreement's choice-of-law provision, which designated Massachusetts law would apply. (Ex. 1 § 27); *Bluetarp Fin.*, 709 F.3d at 82 (noting that choice-of-law provision supported finding of purposeful availment). At a minimum, the forum-selection clause and choice-of-law provision are two more factors weighing in favor of a finding that defendant's contacts with Massachusetts were not random or fortuitous.

In summary, defendant purposefully availed itself of the privilege of conducting business in Massachusetts, and its presence in court was foreseeable.

### c.   <u>Reasonableness</u>

Finally, the exercise of personal jurisdiction must be reasonable. Courts undertaking that analysis consider the five "*Gestalt*" factors:

(1) the defendant's burden of appearing [in the forum state], (2) the forum state's

---

*Metro Freezer & Storage, LLC*, 61 Mass. App. Ct. 1116 (2004). Here, plaintiff's breach-of-contract claim is not premised on the LOI, which explicitly states it is non-binding (with a few exceptions, such as the disclosure of confidential information). And any claim for reimbursement of the $110,000 advance is not based on the LOI itself, but a quasi-contract theory such as unjust enrichment. (*See* Compl. ¶¶ 25-26). Thus, the forum-selection clause contained in the LOI does not bear on whether specific personal jurisdiction is present here.

interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Baskin-Robbins*, 825 F.3d at 40 (citations omitted).

The first factor "is only meaningful where a party can demonstrate some kind of special or unusual burden." *Hannon v. Beard*, 524 F.3d 275, 285 (1st Cir. 2008) (quoting *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994)). Here, defendant apparently operates its business in Wyoming and California. (Aff. of Fraley ¶ 6). However, it has not identified any special burden; thus, the fact that it must appear in Massachusetts "weighs only modestly in its favor." *Baskin-Robbins*, 825 F.3d at 40. As to the second factor, Massachusetts has an interest in "redressing harms committed against its companies by out-of-state companies," including breach of contract. *Bluetarp Fin.*, 709 F.3d at 83. It also has an interest in ensuring "that an out-of-state entity settles up its supposed debts." *Id.* That factor thus weighs towards a finding of personal jurisdiction. As to the third factor, "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." *Sawtelle*, 70 F.3d at 1395. The fourth and fifth factors do not point in any particular direction. Taken together, the "*Gestalt*" factors confirm that the exercise of personal jurisdiction is reasonable here.

For the foregoing reasons, the motion to dismiss will be denied to the extent that it alleges lack of personal jurisdiction.

**B.    Venue**

Defendant next contends that the complaint must be dismissed under Fed. R. Civ. P. 12(b)(3) for improper venue.

"In ruling on a motion filed under Rule 12(b)(3), '[a]ll well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the

defendant's affidavits.  A district court may examine facts outside the complaint to determine

whether its venue is proper.'"  *Turnley v. Banc of Am. Inv. Servs., Inc.*, 576 F. Supp. 2d 204, 211

(D. Mass. 2008) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

*Procedure* § 1352 (3d ed. 2004)).

      Here, defendant seeks dismissal under Fed. R. Civ. P. 12(b)(3) because the LOI contains

a forum-selection clause.[6]  However, the Supreme Court has expressly rejected the argument that

a forum-selection clause can be enforced by a motion to dismiss under Rule 12(b)(3).  *See*

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59 (2013)

(holding that "a forum-selection clause does not render venue in a court 'wrong' or 'improper'

within the meaning of § 1406(a) or Rule 12(b)(3)").

      In any event, the forum-selection clause in the LOI does not govern here.  Indeed,

plaintiff's claims are not premised on the LOI at all.  The breach-of-contract and related claims

are based on an exclusivity provision contained in the affiliate sales agreement.  Furthermore, the

claim for reimbursement of the $110,000 advance is not based on the terms of the LOI itself

(most of which are non-binding in any event), but on quasi-contract theories, such as unjust

enrichment.  (*See* Compl. ¶¶ 25-26).  Although defendant contends that the LOI and affiliate

---

[6] The forum-selection clause that defendant seeks to invoke provides as follows:

      **Governing Law and Forum Selection.**  This LOI shall be governed by and construed in
      accordance with the internal laws of the State of Wyoming, without giving effect to any
      choice or conflict of law provision or rule (whether of Wyoming or any other jurisdiction) that
      would cause the application of laws of any jurisdiction other than those of Wyoming.
      Jurisdiction of all disputes between the Parties shall vest solely and exclusively in Wyoming
      and suit may not be filed in any other jurisdiction.  Further, the Parties consent to the
      jurisdiction of any court in Wyoming and agree to waive any defense on the grounds of forum
      non-conveniens or otherwise that Wyoming is not an appropriate forum.

(Ex. 2 § 6).

sales agreement are "inextricably linked," it has not demonstrated why that is the case. It is difficult to imagine how the LOI's forum-selection clause bears on the affiliate sales agreement, which itself has a separate forum-selection clause directing litigation (or at least some of it) to Massachusetts.

For all of those reasons, venue is not improper under the circumstances. Therefore, the motion to dismiss will be denied to the extent that it alleges improper venue.

C.   **Failure to State a Claim**

Finally, defendant contends that the complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

To survive a motion to dismiss, a complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

1.    **Count 1:  Breach of Contract**

Count 1 alleges breach of contract.  Defendant seeks dismissal of that claim on the ground that the affiliate sales agreement lacks consideration.  It also asserts that plaintiff's breach-of-contract claim relates to the exclusivity provision, yet it seeks damages based on the $110,000 advance from the failed equity transaction.[7]

Under Massachusetts law, to assert a claim for breach of contract, the complaint must allege that (1) a valid contract between the parties existed; (2) the plaintiff was ready, willing, and able to perform; (3) the defendant breached that contract; and (4) the defendant's breach caused the plaintiff damage.  *See Netcracker Tech. Corp. v. Laliberté*, 2020 WL 6384312, at *5 (D. Mass. Oct. 30, 2020) (citing *Bose Corp. v. Ejaz*, 732 F.3d 17, 21 (1st Cir. 2013)).

The elements of a valid contract are an offer, acceptance, and an exchange of consideration or a meeting of the minds.  *See Vadnais v. NSK Steering Sys. Am., Inc*., 675 F. Supp. 2d 205, 207 (D. Mass. 2009).  "[I]n order for a contract to have valid consideration, the contract must be a bargained-for exchange in which there is a legal detriment of the promisee or a corresponding benefit to the promisor."  *Neuhoff v. Marvin Lumber & Cedar Co.*, 370 F.3d 197, 201 (1st Cir. 2004) (quoting *Hinchey v. NYNEX Corp*., 144 F.3d 134, 142 (1st Cir. 1998)).  "The settled rule defines one type of valid consideration as consisting of a legal detriment to the promisee that entails even the slightest trouble or inconvenience."  *Durmic v. J.P. Morgan Chase Bank, NA*, 2010 WL 4825632, at *3 (D. Mass. Nov. 24, 2010).

Here, the affiliate sales agreement provides that Symple "shall be entitled compensation as defined in 'Compensation – Exhibit A' attached to this Agreement."  (Ex. 1 § 6.1).  Exhibit A

---

[7] Defendant has not provided a legal argument justifying dismissal on that basis.  And although the Superior Court's civil-action coversheet lists $110,000 in damages for the breach-of-contract claim, the complaint seeks all damages that plaintiff may have suffered as a result of defendant's conduct.

is blank except for the phrase, "INSERT COMPENSATION TERMS."  (*Id.* Ex. A).  However,

the affiliate sales agreement also contains the following recital:

> NOW, THEREFORE, in consideration of the promises and mutual covenants
> hereinafter set forth and for other good and valuable consideration, the receipt and
> sufficiency of which are hereby acknowledged, [Symple] and DMB agree as
> follows . . . .

(*Id.* Recitals).  The contract also appears to exchange a series of promises.  For example, plaintiff

agreed to "market the Program in accordance with all local, State and Federal laws governing the

Program as well as provide ongoing administrative and customer support for the Program."  (*Id.*

§ 2.7).  And defendant promised to "use reasonable best efforts to market the Program to

Consumers and attempt to enroll Consumers in the Program."  (*Id.* § 2.1).

Under the circumstances, and at this stage of the proceedings, it is certainly plausible that

the affiliate sales agreement is supported by consideration.  *See Durmic*, 2010 WL 4825632, at

*3 (denying motion to dismiss breach-of-contract claim where legal detriments plausibly

included providing documentation, making legal representations, and agreeing to undergo credit

counseling); *Stagikas v. Saxon Mortg. Servs., Inc.*, 795 F. Supp. 2d 129, 136 (D. Mass. 2011)

(denying motion to dismiss where consideration plausibly included legal detriments).

Accordingly, the Court will deny the motion to dismiss to the extent it seeks dismissal of

Count 1.

### 2.   Count 2:  Breach of Implied Covenant of Good Faith and Fair Dealing

Count 2 alleges breach of the implied covenant of good faith and fair dealing.  Defendant

contends that dismissal is warranted because the affiliate sales agreement was not a valid

contract.

Pursuant to Massachusetts law, a covenant of good faith and fair dealing is implied in

every contract.  *See UNO Rests., Inc. v. Bos. Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004).

That covenant provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471 (1991) (quoting *Drucker v. Roland Wm. Jutras Assocs.*, 370 Mass. 383, 385 (1976)). By contracting, parties implicitly agree "to deal honestly and in good faith in both the performance and enforcement of the terms of their contract." *Hawthorne's, Inc. v. Warrenton Realty, Inc.*, 414 Mass. 200, 211 (1993). To establish a breach of the implied covenant, "a plaintiff must prove that there existed an enforceable contract between the two parties and that the defendant did something that had the effect of destroying or injuring the right of [the plaintiff] to receive the fruits of the contract." *FabriClear, LLC v. Harvest Direct, LLC*, 481 F. Supp. 3d 27, 35 (D. Mass. Aug. 24, 2020) (quoting *Blake v. Pro. Coin Grading Serv.*, 898 F. Supp. 2d 365, 388 (D. Mass. 2012)).

Here, defendant reiterates that the affiliate sales agreement lacks consideration, contending that breach of the implied covenant of good faith and fair dealing presupposes an enforceable contract. However, for the reasons explained above, dismissal is not warranted on that basis, and defendant has not made any other argument. Accordingly, the Court will deny the motion to dismiss to the extent it seeks dismissal of Count 2.

### 3.      Count 3:  Unjust Enrichment

Count 3 asserts a claim for unjust enrichment. Defendant contends that dismissal is proper because the complaint fails to plead a benefit conferred upon defendant, defendant's knowledge, or the circumstances of inequity. It further contends that the claimed injury is the same as for plaintiff's other legal theories.

Massachusetts law defines unjust enrichment as the "retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005). To succeed on a claim for unjust enrichment, a

17

plaintiff must show (1) a benefit conferred upon the defendant by the plaintiff, (2) an

appreciation or knowledge by the defendant of the benefit, and (3) that acceptance or retention of

the benefit under the circumstances would be inequitable without payment for its value.

*Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir.

2009).  Unjust enrichment is "an equitable remedy, and 'it is a basic doctrine of equity

jurisprudence that courts of equity should not act . . . when the moving party has an adequate

remedy in law.'"  *Foley v. Yacht Mgmt. Grp.*, 2011 WL 4020835, at *8 (D. Mass. Sept. 9, 2011)

(citing *Massachusetts v. Mylan Labs.*, 357 F. Supp. 2d 314, 324 (D. Mass. 2005)).

Here, the complaint alleges that plaintiff advanced defendant $110,000 in contemplation

of a deal to purchase 30% of defendant's equity.  (Compl. ¶ 9).  It further alleges that the deal

ultimately fell through, but defendant never reimbursed plaintiff for that amount.  (*Id.* ¶¶ 10, 15).

Those allegations are sufficient, assuming the truth of all well-pleaded facts and giving plaintiff

the benefit of all reasonable inferences, to state a plausible claim for unjust enrichment.

Accordingly, the Court will deny the motion to dismiss to the extent it seeks dismissal of

Count 3.

### 4.   Count 4:  Promissory Estoppel

Count 4 asserts a claim of promissory estoppel.  Defendant contends that dismissal is

warranted because the claim is based solely on a promise contained in the affiliate sales

agreement.

Under Massachusetts law, to prove such a claim, a plaintiff must establish that "(1) a

promisor makes a promise which he should reasonably expect to induce action or forbearance of

a definite and substantial character on the part of the promisee, (2) the promise does induce such

action or forbearance, and (3) injustice can be avoided only by enforcement of the promise."

*Loranger Constr. Corp. v. E.F. Hauserman Co.*, 6 Mass. App. Ct. 152, 154 (1978).  The plaintiff

must also have suffered substantial detriment and his reliance must have been reasonable.  *See id.* at 159 n.4; *Rhode Island Hosp. Trust Nat'l Bank v. Varadian*, 419 Mass. 841, 850 (1995).

Promissory estoppel is usually asserted as an alternative theory of recovery for a contract that is not supported by consideration.  Because plaintiff has stated a plausible claim for breach of a contract supported by consideration, the Court need not consider the alternative estoppel theory at this juncture.  *Accord Belyea v. Litton Loan Servicing, LLP*, 2011 WL 2884964, at *9 (D. Mass. July 15, 2011); *Durmic*, 2010 WL 4825632, at *5.  Accordingly, the Court will deny the motion to dismiss to the extent it seeks dismissal of Count 4.

### 5.      <u>Counts 5 and 6:  Declaratory Judgment and Specific Performance</u>

Counts 5 and 6 seek declaratory judgment and specific performance, respectively.  Defendant contends that dismissal is warranted because they are remedies, not causes of action.  They cite *Gideon v. Wells Fargo Bank, N.A.*, for the proposition that "declaratory judgment . . . [and] specific performance . . . are not stand-alone causes of action but remedies a litigant may seek in a prayer for relief."  2020 WL 1332838, at *1 n.1 (D. Mass. Mar. 23, 2020).  In any event, plaintiff has stated in its briefing that it "consents not to pursue those theories as causes of action."  (Pl. Opp'n at 1 n.1).  Accordingly, the Court will grant the motion to dismiss to the extent it seeks dismissal of Counts 5 and 6.

### 6.      <u>Count 7:  Chapter 93A</u>

Finally, Count 7 alleges violations of Mass. Gen. Laws ch. 93A.  Defendant asserts that dismissal is proper because a mere breach of contract does not support a Chapter 93A claim and because the alleged conduct did not occur primarily and substantially within the Commonwealth of Massachusetts.

A defendant may be liable under Chapter 93A if it engages in an unfair method of competition or an unfair or deceptive act or practice.  Mass. Gen. Laws ch. 93A, §§ 2, 11.  The

statute provides that an action under § 11 can only be brought if "the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth." *Id.* § 11.  To trigger liability under Chapter 93A, the conduct in question must fall within "'the penumbra of some common-law, statutory, or other established concept of unfairness' or be 'immoral, unethical, oppressive or unscrupulous.'" *Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 40 (1st Cir. 2000) (quoting *Cambridge Plating Co. v. Napco, Inc.*, 85 F.3d 752, 769 (1st Cir. 1996) (alterations omitted)).

It is well settled that "[a] mere breach of contract does not constitute an unfair or deceptive trade practice under 93A, unless it rises to the level of commercial extortion or a similar degree of culpable conduct." *Id.* (quotations and citations omitted).  For example, the First Circuit upheld a finding that a defendant violated Chapter 93A by withholding money that it legally owed under the contract at issue, because it used the money owed as a form of extortion—"to enhance [defendant's] bargaining power." *See Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 18 (1st Cir. 1985).  Similarly, the court upheld a finding that a defendant violated Chapter 93A by withholding payment and "stringing out the process" with the intent to "force [the plaintiff] into an unfavorable settlement." *See Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 55-56 (1st Cir. 1998).

Here, plaintiff's opposition seeks to recast many allegations in the complaint as unfair or deceptive acts.  For example, the complaint alleges that defendant was subject to an exclusivity provision and breached that promise by marketing for Beyond, a direct competitor of plaintiff.  (Compl. ¶¶ 6, 14).  From those allegations, plaintiff asks the Court to infer that "Symple lied to DMB by saying that it would work exclusively for DMB and then secretly provided services to

20

DMB's competitors." (Pl. Opp'n at 14). Similarly, the complaint alleges that plaintiff advanced $110,000 in contemplation of a deal to purchase 30% of defendant's equity, and that defendant never repaid that advance. (Compl. ¶¶ 9, 10, 15). Plaintiff then draws the inference that "Symple accepted $110,000 from DMB when it knew or should have known that it would not complete the transaction contemplated by the LOI and has refused to return that money without providing any justification therefore." (Pl. Opp'n at 14).[8] It is true that the Court must give plaintiff the benefit of all *reasonable* inferences; however, those inferences are not tethered to the complaint's factual allegations and are not reasonable under the circumstances.

Ultimately, the allegations of the complaint amount to little more than a claim for breach of contract and for unjust enrichment. There are no allegations that defendant "did not intend to fulfill its obligations" at the time the affiliate sales agreement was executed or that it engaged in commercial extortion. *Pine Polly, Inc. v. Integrated Packaging Films IPF, Inc.*, 2014 WL 1203106, at *7 (D. Mass. Mar. 19, 2014). Nor are there allegations that defendant's conduct "causes substantial injury to consumers (or competitors or other businessmen)" or is otherwise "immoral, unethical, oppressive, or unscrupulous." *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975). "Even an intentional or knowing breach of contract, standing alone, is insufficient" for a Chapter 93A, § 11 violation. *See H1 Lincoln, Inc. v. S. Washington St., LLC*, 489 Mass. 1, 17 n.11 (2022). And merely failing to repay the $110,000 advance, without more, does not support a claim. *See Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*, 2015 WL 4467064, at *9 (D. Mass. July 20, 2015) (stating that "mere non-payment of a debt does not normally constitute a Chapter 93A violation").

---

[8] That argument is made notwithstanding another allegation in the complaint that "DMB said that it would not immediately demand reimbursement of the $110,000" because the parties' "relationship was going well." (Compl. ¶ 10).

Accordingly, the Court will grant the motion to dismiss to the extent it seeks dismissal of Count 7.[9]

**III.    <u>Conclusion</u>**

For the foregoing reasons, defendant's motion to dismiss is GRANTED as to Counts 5 (declaratory judgment), 6 (specific performance), and 7 (Chapter 93A) for failure to state a claim upon which relief can be granted, and is otherwise DENIED.

**So Ordered.**


                                        /s/ F. Dennis Saylor IV
                                        F. Dennis Saylor IV
Dated: June 1, 2022                     Chief Judge, United States District Court

---

[9] Because the Court concludes that the complaint fails to state a claim under Chapter 93A, it does not reach the question of whether "the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth." *See* Mass. Gen. Laws ch. 93A, § 11.