**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| DMB FINANCIAL, LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>SYMPLE LENDING, LLC, and )<br>BEYOND FINANCE, LLC, )<br><br>Defendants. ) | Civil Action No.: 1:21-cv-12065-FDS |

**DEFENDANT SYMPLE LENDING, LLC'S ANSWER, AFFIRMATIVE DEFENSES,**
**AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT**

COMES NOW, Defendant SYMPLE LENDING, LLC (hereinafter referred to as

"SYMPLE" or "DEFENDANT") through its counsel, hereby answers the Complaint of DMB

FINANCIAL, LLC ("Plaintiff") as set forth below:

**PARTIES**

1.      As to paragraph 1, DEFENDANT admits to the allegations set forth therein.

2.      As to paragraph 2, DEFENDANT admits to the allegations set forth therein.

3.      As to paragraph 3, DEFENDANT is without information or belief to either admit

or deny the allegations contained in paragraph 3, and based upon said DEFENDANT's lack of

information and belief, denies each and every allegation contained in paragraph 3.

**FACTS**

4.      As to paragraph 4, DEFENDANT admits it is a debt settlement business.

DEFENDANT is without information or belief to either admit or deny the remaining allegations

contained in paragraph 4, and based upon said DEFENDANT's lack of information and belief,

denies each and every remaining allegation contained in paragraph 4.

1

5.      As to paragraph 5, DEFENDANT is without information or belief to either admit or deny the allegations contained in paragraph 5, and based upon said DEFENDANT's lack of information and belief, denies each and every allegation contained in paragraph 5.

6.      As to paragraph 6, DEFENDANT admits it signed an Affiliate Sales Agreement with PLAINTIFF. DEFENDANT denies the agreement was entered into on May 13, 2021. DEFENDANT admits that the document attached to the Affidavit of John Caron includes the language stated in PLAINTIFF's complaint.

7.      As to paragraph 7, DEFENDANT denies the allegations set forth therein.

8.      As to paragraph 8, DEFENDANT denies the allegations set forth therein.

9.      As to paragraph 9, DEFENDANT admits PLAINTIFF and DEFENDANT agreed to the terms of a Letter of Intent which contemplated DMB purchasing 30% of the equity in Symple. DEFENDANT denies the remaining allegations contained in paragraph 9.

10.     As to paragraph 10, DEFENDANT denies the allegations set forth therein.

11.     As to paragraph 11, DEFENDANT addresses the itemized allegations below:

-    As to the first (-) allegation of paragraph 11, DEFENDANT admits that PLAINTIFF advanced some monthly commissions before the commissions would normally be due. DEFENDANT denies that any payments were made pursuant to the Agreement as DEFENDANT denies that Agreement was valid and enforceable.

-    As to the second (-) allegation of paragraph 11, DEFENDANT denies the allegations set forth therein.

-    As to the third (-) allegation of paragraph 11, DEFENDANT denies the allegations set forth therein. DEFENDANT admits that PLAINTIFF made minor modifications to its existing CRM. DEFENDANT is without information or belief to either admit or deny

the allegations regarding PLAINTIFF's alleged costs, and on that basis denies those allegations.

- As to the fourth (-) allegation of paragraph 11, DEFENDANT admits that PLAINTIFF agreed to change the amount it charged DEFENDANT to obtain consumer credit reports after DEFENDANT discovered PLAINTIFF was charging DEFENDANT a fee above PLAINTIFF's actual costs to obtain the credit reports. DEFENDANT confronted PLAINTIFF regarding this issue and PLAINTIFF agreed to charge DEFENDANT its actual costs for obtaining the credit reports. DEFENDANT is without information or belief to either admit or deny the allegations regarding PLAINTIFF's alleged losses, and on that basis denies those allegations.

- As to the fifth (-) allegation of paragraph 11, DEFENDANT denies the allegations contained therein as DEFENDANT did not use any digital media company.

- As to the sixth (-) allegation of paragraph 11, DEFENDANT admits that PLAINTIFF "introduced" SYMPLE to a Data Scientist. DEFENDANT denies that PLAINTIFF was in a position to "approve" of or bar DEFENDANT from engaging the services of said Data Scientist. DEFENDANT is without information or belief to either admit or deny the allegations regarding an alleged discount for the Data Scientist's services as DEFENDANT never engaged the services of the Data Scientist, and therefore denies those allegations.

- As to the seventh (-) allegation of paragraph 11, DEFENDANT denies that PLAINTIFF built custom reports and performance dashboards for DEFENDANT. The reports and performance dashboards already existed and when shown to DEFENDANT by PLAINTIFF, DEFENDANT requested minor modifications.

3

DEFENDANT is without information or belief to either admit or deny the allegations regarding PLAINTIFF's alleged costs, and on that basis denies those allegations.

- As to the eighth (-) allegation of paragraph 11, DEFENDANT denies the allegations contained therein.

- As to the ninth (-) allegation of paragraph 11, DEFENDANT denies the allegations contained therein.

- As to the tenth (-) allegation of paragraph 11, DEFENDANT denies PLAINTIFF handled any issues with either the American Fair Credit Council or the Better Business Bureau on its behalf. DEFENDANT admits that a consumer enrolled by DEFENDANT in one of PLAINTIFF's programs posted a complaint on DEFENDANT's website and, on information and belief, filed a complaint with the American Fair Credit Council against PLAINTIFF. DEFENDANT denies that the conduct of any its agents was the cause of the complaint. DEFENDANT was never informed of any complaint with either the Better Business Bureau or the American Fair Credit Council against DEFENDANT.

- As to the eleventh (-) allegation of paragraph 11, DEFENDANT denies the allegations contained therein.

12.     As to paragraph 12, DEFENDANT is without information or belief to either admit or deny the allegations contained in paragraph 12, and based upon said DEFENDANT's lack of information and belief, denies each and every allegation contained in paragraph 12.

13.     As to paragraph 13, DEFENDANT denies that the amounts shows as debt enrolled in a DMB program by DEFENDANT for the months of June, July August, September

4

and October 2021 are accurate. DEFENDANT admits the amount shown as debt enrolled in a DMB program by DEFENDANT for November 2021 is accurate.

14.     As to paragraph 14, DEFENDANT denies the allegations set forth therein.

15.     As to paragraph 15, DEFENDANT denies the allegations set forth therein.

## COUNT I

### (Breach of Contract)

16.     As to paragraph 16, DEFENDANT repeats and re-alleges its answers to Paragraphs 1 – 15, inclusive, as though fully set forth herein.

17.     As to paragraph 17, DEFENDANT denies the allegations set forth therein.

18.     As to paragraph 18, DEFENDANT denies the allegations set forth therein.

19.     As to paragraph 19, DEFENDANT denies the allegations set forth therein.

20.     As to paragraph 20, DEFENDANT denies the allegations set forth therein.

## COUNT II

### (Breach of Contract)

21.     As to paragraph 21, DEFENDANT repeats and re-alleges its answers to Paragraph 1 – 20, inclusive, as though fully set forth herein.

22.     As to paragraph 22, DEFENDANT denies the allegations set forth therein.

23.     As to paragraph 23, DEFENDANT denies the allegations set forth therein.

24.     As to paragraph 24, DEFENDANT denies the allegations set forth therein.

## COUNT III

### (Unjust Enrichment)

25.     As to paragraph 25, DEFENDANT repeats and re-alleges its answers to Paragraphs 1 – 24, inclusive, as though fully set forth herein.

26.     As to paragraph 26, DEFENDANT denies the allegations set forth therein.

## COUNT IV

### (Promissory Estoppel)

27.     As to paragraph 27, DEFENDANT repeats and re-alleges its answers to

Paragraph 1 – 26, inclusive, as though fully set forth herein.

28.     As to paragraph 28, DEFENDANT denies the allegations set forth therein.

29.     As to paragraph 29, DEFENDANT denies the allegations set forth therein.

30.     As to paragraph 30, DEFENDANT denies the allegations set forth therein.

31.     As to paragraph 31, DEFENDANT denies the allegations set forth therein.

32.     As to paragraph 32, DEFENDANT denies the allegations set forth therein.

33.     As to paragraph 33, DEFENDANT denies the allegations set forth therein.

34.     As to paragraph 34 – 44, which comprise Counts V, VI and VII, DEFENDANT

does not address these paragraphs here as they were dismissed by the Court in its order of June 1,

2022.

## FURTHER ANSWER AND AFFIRMATIVE DEFENSES

DEFENDANT asserts the following defenses, reserving the right to supplement or amend

these defenses as discovery proceeds.

## FIRST DEFENSE

1.     The Complaint, on one or more counts set forth therein, fails to state a claim upon

which relief can be granted.

## SECOND DEFENSE

2.     The claims made in the Complaint are barred, in whole or in part, by applicable

statutes of limitations.

## THIRD DEFENSE

3.      The claims made in the Complaint are barred by laches, in that PLAINTIFF has unreasonably delayed efforts to enforce its rights, if any, despite its full awareness of the alleged conduct.

## FOURTH DEFENSE

4.      Each of the purported allegations set forth in the Complaint is barred by the doctrines of waiver, acquiescence, and estoppels.

## FIFTH DEFENSE

5.      The claims made in the Complaint are barred because PLAINTIFF's damages, if any, were not caused by DEFENDANT.

## SIXTH DEFENSE

6.      Without admitting any truth to the allegations contained in the Complaint, DEFENDANT contends that there has been no damage in any amount, manner or at all by reason of any alleged act by DEFENDANT.

## SEVENTH DEFENSE

7.      The claims made in the Complaint are barred by the doctrine of unclean hands.

## EIGHTH DEFENSE

8.      The claims made in the Complaint are barred, in whole or in part, because of a failure to mitigate damages, if such damages exist.

## NINTH DEFENSE

9.      Without admitting any truth of the allegations contained in the Complaint, any remedy claimed by PLAINTIFF is limited to the extent that the claims are overlapping or request duplicative recovery pursuant to the various claims against Defendant.

**TENTH DEFENSE**

10.     The claims made in the Complaint are barred, in whole or in part, because DEFENDANT is not liable for the acts of others over whom it has no control.

**ELEVENTH DEFENSE**

11.     DEFENDANT alleges that no punitive or exemplary damages should be awarded arising out of the claims made in the Complaint under the laws of the United States of America and Massachusetts.

**TWELFTH DEFENSE**

12.     DEFENDANT asserts that it has performed all duties owed under the contract, if any, other than any duties which were prevented or excused, and therefore never breached the agreement.

**THIRTEENTH DEFENSE**

13.     DEFENDANT asserts that it substantially complied with the contract, leaving only a small part of the contract undone, and that as a result awarding the judgment sought by the PLAINTIFF, would be unjust and unfair.

**FOURTEENTH DEFENSE**

14.     DEFENDANT asserts that PLAINTIFF is seeking to recover more than PLAINTIFF is entitled to recover in this case, and award of the judgment sought by PLAINTIFF would unjustly enrich PLAINTIFF.

**FIFTEENTH DEFENSE**

15.     DEFENDANT asserts that the contract was mutually cancelled by DEFENDANT and PLAINTIFF.

## SIXTEENTH DEFENSE

16.     DEFENDANT asserts that PLAINTIFF obtained DEFENDANT's consent to the contract or transaction through fraud, deceit, or misrepresentation by PLAINTIFF, and that as a result the contract is invalid.

## SEVENTEENTH DEFENSE

17.     DEFENDANT asserts that PLAINTIFF owes money or other valuable consideration to DEFENDANT, or has not properly credited payments made, and that as a result DEFENDANT owes less than the amount claimed by PLAINTIFF.

## EIGHTEENTH DEFENSE

18.     DEFENDANT asserts that even if PLAINTIFF's other allegations are true, PLAINTIFF did not suffer any damages.

## NINETEENTH DEFENSE

19.     DEFENDANT asserts that the contract on which PLAINTIFF sues is unenforceable as it lacks material terms.

## COUNTERCLAIMS

Defendant and Counterclaim-Plaintiff SYMPLE LENDING, LLC ("SYMPLE") brings these Counterclaims against Counterclaim-Defendant DMB FINANCIAL, LLC ("DMB"), because it induced SYMPLE to enter into an agreement through fraud and misrepresentation and has breached the terms of that agreement.

## PARTIES

1.     Counterclaim-Plaintiff SYMPLE is a Wyoming company with a principal place of business in Sheridan, Wyoming.

2.      Counterclaim-Defendant DMB, on information and belief, is a Massachusetts company, with a principal place of business in Beverley, Massachusetts.

## FACTS

3.      DMB is in the debt settlement business, which offers and provides "financial advisory services," including debt-settlement services, to consumers owing unsecured debts to creditors. DMB utilizes outside marketing companies to market to, and enroll, potential consumers in one of DMB's debt settlement programs. SYMPLE is a marketing company which works with debt settlement businesses for these purposes.

4.      Mr. John Caron of DMB began soliciting SYMPLE to become an affiliate of DMB in the spring of 2020.  SYMPLE was concerned about doing business with DMB because of a pending litigation where DMB was sued by Bureau of Consumer Financial Protection (discussed in detail below). John Caron against solicited SYMPLE in late 2020, early 2021. He assured SYMPLE that DMB was in a strong position in the Bureau of Consumer Financial Protection lawsuit, that DMB was preparing to file a counter suit, and that the whole litigation would be over very soon. On information and belief, no counter suit was ever filed by DMB in the Bureau of Consumer Financial Protection lawsuit.

5.      Based on Mr. Caron's representations regarding the status of the Bureau of Consumer Financial Protection lawsuit, SYMPLE agreed to enter into a business relationship with DMB.

6.      On May 14, 2021, SYMPLE sent to DMB an executed DMB Financial Affiliate Sales Agreement (the "Affiliate Agreement").

7.      SYMPLE enrolled 33 Consumers in DNB's program from October 1, 2021, to November 1, 2021, for the total debt of $925,267.26. The compensation owed to SYMPLE for

the total debt enrollment was $64,768.71. DMB paid $50,000.00 on those enrollments.

DMB has not paid the remaining outstanding balance of $14,768.71.

8.      Item 10.2.3 of the Affiliate Agreement states, "DMB will operate the Program in

accordance with all state and Federal laws applicable to the Program and in a manner consistent

with good business practice."

9.      Prior to entering into the Affiliate Agreement with SYMPLE, DMB was sued by

the Bureau of Consumer Financial Protection for violations of the Telemarketing Sales Rule

(TSR), 16 C.F.R. pt. 310 and the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C.

Section 5531, 5536 (a), in connection with DMB's marketing and sale of Debt-Relief Services.

(*See Bureau of Consumer Financial Protection v. DMB Financial,* LLC, United States District

Court, District of Massachusetts case number 1:20-cv-12147 (the "Bureau of Consumer

Financial Protection litigation".) In that case, DMB stipulated to a Final Judgment and Order (the

"Stipulated Judgment") which provides:

> "A judgment for monetary relief is entered in favor of the Bureau and
> against the Defendant in the amount of $7,700,000 for the purpose of providing
> redress to Affected Consumers…
>
> …
>
> "…Defendant may meet its obligations under this Paragraph by
> demonstrating to the Bureau…that it has previously made Refunds to Affected
> Consumers.
>
> …
>
> "Under § 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the
> violations of law alleged in the Complaint and continuing until the Effective Date,
> and taking into account the factors in 12 U.S.C. § 5565(c)(3), Defendant must pay
> a civil money penalty of $1 to the Bureau. This nominal penalty is based on
> Defendant's limited ability to pay as attested to in its financial statements listed in
> Section VIII above.
>
> …

"Defendant must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes…

…

"Within 30 days of the Effective Date, Defendant  must deliver a copy of this order to…any managers, employees, service providers, or other agents and representatives who have responsibilities related to the subject matter of this Order.

…

"Defendant must secure a signed and dated statement acknowledging receipt of a copy of this Order…from all persons receiving a copy of this Order under this Section."

10.      In addition to the above language, the Stipulated Judgment includes the headings, "I. Prohibition on Charging Unlawful Settlement Fees," "II. Prohibition on Deceptive Practices," and "III. Prohibition on Obtaining Consumers' Credit Reports."

11.      The Stipulated Judgment was entered on May 19, 2021. On May 14, 2021, John Caron, Partner and Chief Revenue Officer of DMB (as well as the main contact between DMB and SYMPLE) sent an email to Gary Lozano and Houston Fraley of SYMPLE asking about the status of the Affiliate Agreement. Mr. Fraley returned a signed draft of the Affiliate Agreement (which did not include Exhibit A defining the compensation to be paid) that same day.

12.      Mr. Caron (or anybody with DMB) did not at that time, or any time before, disclose to SYMPLE the true status of the Bureau of Consumer Financial Protection litigation, specifically that DMB was negotiating the Stipulated Judgment. It is not plausible that Mr. Caron was not aware of the terms of the Stipulated Judgment a mere five days before it was entered by the Court.

13.      SYMPLE would not have agreed to do business with DMB if it had known DMB was preparing to publicly agree to pay a $7.7 million judgment; agree to a civil money penalty based on violations of law; and agree that a judgment was necessary to prevent DMB from

"Charging Unlawful Settlement Fees," undertaking "Deceptive Practices," and "Obtaining Consumers' Credit Reports" for reasons not authorized under the Fair Credit Reporting Act.

14.     The existence of the Stipulated Judgment demonstrates that DMB was breaching item 10.2.3 of the Affiliate Agreement in that it clearly was not operating its business "in accordance with all state and Federal laws," and certainly was not operating "in a manner consistent with good business practice."

15.     DMB has never disclosed the Stipulated Judgment to SYMPLE, nor did it seek or obtain a written receipt from SYMPLE confirming its receipt of the Stipulated Judgment. This is a violation of paragraphs 37 and 38 of the Stipulated Judgment. By violating the Stipulated Judgment in its dealings with Symple, DMB violated item 10.2.3 of the Affiliate Agreement.

16.     In May of 2018, also prior to the execution of the Affiliate Agreement by SYMPLE, DMB was sued by the Commonwealth of Massachusetts, wherein the Massachusetts Attorney General accused DMB of harming financially distressed consumers in Massachusetts. (*See Commonwealth of Massachusetts v. DMB Financial, LLC, et al.,* Suffolk County, Commonwealth of Massachusetts, Superior Court Case No. 1884CV01472-BLS1 (the MA AG litigation).) DMB entered into a Final Judgment as to DMB Financial, LLC, and Daniel Kwiatek, by Consent (the "Consent Judgment") in that case on August 21, 2021, enjoining them from:

> "a.     Making deceptive and unsubstantiated claims about DMB's ability to settle consumers' debts…
>
> "b.     Failing to include clear, conspicuous and prominent disclosures…[t]he percentage of enrolled consumers who fail to complete DMB's debt settlement program…
>
> "c.     Failing to include clear, conspicuous and prominent disclosures…i. that consumers' credit will likely suffer; ii. that the consumers may be sued by creditors…; iii. that consumers' debts will continue to grow through accrued interest and fees while enrolled in DMB's program and that the debt balances owed by consumers who fail to complete DMB's program increase;

"d.     Failing to clearly, conspicuously and prominently disclosure…the time by which DMB will make a bona fide settlement offer…

"e.     Requesting and receiving settlement fees other than those calculated as a fixed percentage of either (i) the amount of a consumer's debts at the time the consumer enrolled in DMB's debt settlement program, or (2) the amount of savings achieved by the consumer….;

"f.     Collecting a settlement fee before a consumer has made at least one payment…

"g.     Failing to provide a refund to a consumer of a portion of a settlement fee collected by DMB in the event that the consumer does not complete making payment on the applicable settlement…

"h.     Enrolling a consumer in DMB's debt settlement program unless DMB reasonably believes such consumer is likely to complete DMB's debt settlement program…

"i.     Directing consumers to stop communicating with or making payments to their creditors;

"j.     Advising, representing or negotiating on behalf a consumer (sic) who is sued for nonpayment of a debt with regard to that particular debt;

"k.     Failing to promptly provide consumers who are sued for nonpayment of debts…with the list of available resources attached [to the Consent Judgment] as Exhibit C.

"l.     Misrepresenting, or assisting others in misrepresenting, expressly or impliedly, the identity and nature of DMB and its affiliates' business."

17.     Further, the Consent Judgment required DMB to pay a total of $1,000,000, payable in installments over one year, to the Commonwealth of Massachusetts.  The Consent Judgment also required DMB to "…certify compliance with the terms and practices changes set forth…" in the Consent Judgment, as detailed above.

18.     The Consent Judgment was entered on August 2, 2021. From the time Mr. Fraley returned the signed draft of the Affiliate Agreement (which again, was missing necessary terms of a contract as Exhibit A, containing the compensation provisions, was not included), through August 2, 2021, DMB was breaching items 10.2.3 of the Affiliate Agreement in that it clearly

14

was not operating its business "in accordance with all state and Federal laws", and certainly was not operating "in a manner consistent with good business practice."

19.     DMB has never disclosed the MA AG litigation or the Consent Judgment to SYMPLE. If SYMPLE had known that DMB was being sued for multiple instances of unfair and deceptive acts and practices, as well as the unlawful practice of law, it would not have agreed to do business with DMB. If SYMPLE had known that DMB was going to publicly agree to pay a $1,000,000 judgment, and agree that a judgment was necessary to prevent DMB from the unfair and deceptive acts, it would not have agreed to do business with DMB.

20.     In the five to six months SYMPLE worked as an affiliate for DMB, it experienced numerous consumers and even its own agents being uncomfortable working with DMB due to its public record of malfeasance. SYMPLE determined that it could no longer do business with DMB.

21.     On November 1, 2022, Mr. Houston Fraley of SYMPLE notified Mr. John Caron of DMB that SYMPLE was terminating its business relationship with DMB. DMB immediately locked SYMPLE out of DMB's computer system and data base causing SYMPLE to no longer have any access to DMB's data base or any other information needed to do business with DMB.

## COUNT I

### (Breach of Contract)

22.     SYMPLE repeats and incorporates herein by reference the allegations set forth in paragraphs 1 – 21 as though fully set forth herein.

23.     The Affiliate Agreement is a valid and binding contract.

24.     SYMPLE has fully and faithfully performed each and every obligation owed by it to DMB, or was excused from such performance.

25.     DMB has materially breached the Affiliate Agreement by, *inter alia*, its conduct, as described above. Specifically, DMB violated the Affiliate Agreement by failing to operate its business "in accordance with all state and Federal laws," and "in a manner consistent with good business practice."

26.     DMB further materially breached the Affiliate Agreement by, *inter alia*, failing to pay all moneys due to SYMPLE, in the amount of not less than $14,768.71.

27.     As a result of DMB's material breaches of the Affiliate Agreement, SYMPLE has been injured and suffered substantial damages.

## COUNT II

### (Intentional Misrepresentation/Fraud)

28.     SYMPLE repeats and incorporates herein by reference the allegations set forth in paragraphs 1 – 27 as though fully set forth herein.

29.     DMB made a false statement to SYMPLE when its agent, Mr. Caron, stated that DMB would be filing a counter suit in the Bureau of Consumer Financial Protection lawsuit and that the matter would be over quickly.

30.     The false statement concerned a fact that was important to SYMPLE's decision to enter into a business relationship with DMB.

31.     When DMB made the statement, it knew that it was false or recklessly disregarded the statement's falsity.

32.     DMB intended SYMPLE to rely on the false statement in making its decision on whether to enter into a business relationship with DMB.

33.     SYMPLE reasonably relied on DMB's statement.

16

34.     By relying on DMB's false statement, SYMPLE has been injured and suffered substantial damages.

## COUNT III

### (Fraud – Omission)

35.     SYMPLE repeats and incorporates herein by reference the allegations set forth in paragraphs 1 – 34 as though fully set forth herein.

36.     Every contract in Massachusetts is subject to an implied covenant of good faith and fair dealing. This covenant imposes a duty on the parties to the contract to not do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

37.     By choosing to withhold information from SYMPLE regarding DMB's intent to enter into the Stipulated Judgment in the Bureau of Consumer Financial Protection litigation, DMB breached its duties owed to SYMPLE.

38.     Further, by choosing to withhold information regarding the fact that DMB had been sued in the MA AG litigation, and subsequently withholding the fact that it had entered into the Consent Judgment, DMB again breached its duties owed to SYMPLE.

39.     A party may be liable for fraud by knowingly concealing or omitting material information in violation of a duty to disclose it. DMB knew that SYMPLE initially declined to enter into a business relationship with DMB because of the Bureau of Consumer Financial Protection litigation. DMB knowingly and intentionally concealed facts related to the Bureau of Consumer Financial Protection litigation and the MA AG litigation to induce SYMPLE to enter into a business relationship with DMB.

40.     SYMPLE would not have entered into a business relationship with DMB had DMB not concealed facts related to the Bureau of Consumer Financial Protection litigation and the MA AG litigation.

41.     SYMPLE has been injured and suffered substantial damages due to SYMPLE'S fraudulent concealment of material facts.

## COUNT IV

### (Negligent Misrepresentation)

42.     SYMPLE repeats and incorporates herein by reference the allegations set forth in paragraphs 1 – 41 as though fully set forth herein.

43.     DMB made a false statement to SYMPLE when its agent, Mr. Caron, stated that DMB would be filing a counter suit in the Bureau of Consumer Financial Protection lawsuit and that the matter would be over quickly.

44.     In supplying the statement, DMB acted in the course of its business.

45.     DMB made the statement for SYMPLE's guidance in its business transactions.

46.     DMB failed to use reasonable care in making the statement.

47.     SYMPLE reasonably relied on DMB's statement.

48.     SYMPLE has been injured and suffered substantial damages by relying on DMB's false statement.

## PRAYER FOR RELIEF

WHEREFORE, DEFENDANT/CROSSCLAIM PLAINTIFF SYMPLE LENDING, LLC prays that this Court will:

(a)     Dismiss with prejudice the claims brought by DMB Financial, LLC against

Symple Lending, LLC;

18

(b)     Enter a judgment in Symple Lending, LLC's favor on all counts of the

Counterclaim.

(c)     Award statutory and actual damages on Symple Lending, LLC's Counterclaims

against DMB Financial, LLC in an amount be determined at trial;

(d)     Award Symple Lending, LLC its costs and expenses in defending and bringing

this action; and

(e)     For such other relief as the Court deems proper.


Defendant/Crossclaim Plaintiff Symple Lending, LLC hereby demands a jury trial on

claims so triable.

Respectfully Submitted,

SYMPLE LENDING, LLC

By its attorneys,


/s/Alyssa Milman White
Alyssa Milman White, Esq. CA State Bar No. 160212
(Admitted Pro Hac Vice)
Angelo & White, APC
610 Newport Center Drive, Suite 1200
Newport Beach, CA  92660
949-640-0800
Date: June 15, 2022          alyssa@angelowhitelaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above-document and exhibits appended thereto were served on the following attorneys via the Court's ECF system on this day, June 15, 2022:

Shepard Davidson, Esq.
sdavidson@burnslev.com
Burns & Levinson, LLP
125 High Street
Boston, MA 02110

Gregory S. Paonessa, Esq.
gpaoness@burnslev.com
Burns & Levinson, LLP
125 High Street
Boston, MA 02110

Damon M. Seligson, Esq.
dseligson@sheehan.com
Jonathan R. Voegele, Esq.
jvoegele@gmail.com
Sheehan Phinney Bass & Green PA
28 State Street, 22nd Floor
Boston, MA 02109

Tara E. Lynch, Esq.
tlynch@grsm.com
Gordon Rees Scully Mansukhani, LLP
21 Custom House Street, 5th Flr.
Boston, MA 02110

Stephen J. Orlando
sorlando@grsm.com
Gordon Rees Scully Mansukhani, LLP
21 Custom House Street, 5th Flr.
Boston, MA 02110

/s/Alyssa Milman White
Alyssa Milman White, Esq. (SBN 160212)